NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0456n.06

Case No. 25-3366

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 09, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CHEMICAL SOLVENTS, INC., | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| GREENWICH INSURANCE COMPANY; ILLINOIS NATIONAL INSURANCE COMPANY; ALEMBIC, INC., | ) | |
| Defendants-Appellees. | ) | OPINION |

Before: GRIFFIN, THAPAR, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Chemical Solvents, Inc. sued its insurers, Greenwich Insurance Company and Illinois National Insurance Company, for allegedly resolving a claim against it in an improper way. We (and the district court) ruled against Chemical Solvents on its breach-of-contract and declaratory-judgment claims. Chemical Solvents now challenges the district court's grant of summary judgment to Greenwich and Illinois National on its bad-faith claim. Chemical Solvents also argues that the district court should have allowed it to obtain discovery on its bad-faith claim. We reject Chemical Solvents's arguments and affirm.

## I.

In 2014, two individuals sued Chemical Solvents for bodily injury caused by exposure to chemicals. *Chem. Solvents, Inc. v. Greenwich Ins. Co.*, No. 22-3324, 2023 WL 179772, at *1 (6th Cir. Jan. 13, 2023) (*Chem. Solvents I*). Chemical Solvents tendered the defense of that suit to its insurers, Greenwich and Illinois National. *Chem. Solvents, Inc. v. Greenwich Ins. Co.*, No. 24-

No. 25-3366, *Chemical Solvents, Inc. v. Greenwich Ins. Co., et al.*

3326, 2025 WL 40943, at *1 (6th Cir. Jan. 7, 2025) (*Chem. Solvents II*). Although Chemical Solvents believed it could successfully defend the case, Greenwich and Illinois National settled it. This was permissible under the insurers' respective policies with Chemical Solvents, which allowed the insurers to settle for an amount not exceeding the policies' monetary limits.

Chemical Solvents, however, believes that Greenwich and Illinois National engaged in an underhanded attempt to structure the settlement such that a substantial portion of the settlement costs would fall to Chemical Solvents. They did so, Chemical Solvents claims, by taking advantage of Chemical Solvents's separate membership in a group captive insurer called Alembic, Inc. Group captive insurance is a form of self-insurance, where member-companies band together to establish their own insurance company and pay premiums into a shared reinsurance pool.[1] And because Illinois National had its own reinsurance contract with Alembic, the settlement left Chemical Solvents on the hook for a substantial portion of the settlement. *Chem. Solvents I*, 2023 WL 179772, at *1.

The process went like this. Chemical Solvents paid premiums into Alembic's captive-insurance pool. Alembic held a portion of these premiums in escrow in a redemption account belonging to Chemical Solvents. Illinois National paid $2.9 million to settle the bodily injury lawsuit. Illinois National invoiced Alembic for $2.7 million. Alembic depleted Chemical Solvents's redemption account to pay the invoice, leaving Chemical Solvents with a negative balance.

Chemical Solvents sued Greenwich and Illinois National for: (1) a declaratory judgment, (2) bad-faith claims handling, and (3) breach of contract. The district court bifurcated the bad-

---

[1] *See generally* Patricia Born and William T. Hold, Ins. Info. Inst., A Comprehensive Evaluation of the Member-Owned Group Captive Option 4 (2021), https://perma.cc/P95Q-BATG.

faith claim from the breach-of-contract and declaratory-judgment claims. We affirmed the district court's grant of summary judgment to the insurers on the breach-of-contract and declaratory-judgment claims. *Id.* at *3. The district court then granted summary judgment to Greenwich and Illinois National on the bad-faith claim without allowing Chemical Solvents to obtain discovery on that claim. Chemical Solvents appeals again.

## II.

Chemical Solvents argues that the district court erred by: (1) granting summary judgment to Greenwich and Illinois National on Chemical Solvents's bad-faith claim; and (2) denying Chemical Solvents's motion to conduct discovery on the bad-faith claim under Federal Rule of Civil Procedure 56(d). We address each argument in turn.

## A.

We begin with the district court's grant of summary judgment to Greenwich and Illinois National. We review the district court's summary-judgment decision de novo. *Levine v. DeJoy*, 64 F.4th 789, 796 (6th Cir. 2023) (citation omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When, like here, an action is premised on diversity of jurisdiction, 28 U.S.C. § 1332(d)(2), we apply the forum state's substantive law, *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). The parties agree that Ohio substantive law governs. *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016).

Under Ohio law, an insurance contract creates a relationship between an insurer and its insured. *Scott Fetzer Co. v. Am. Home Assurance Co.*, 229 N.E.3d 70, 75 (Ohio 2023). Implicit in that "relationship is the insurer's obligation to play fairly with its insured when handling the

insured's claims." *Id.* (citation modified). In other words, the insurer must act in good faith in handling its insured's claim. *Id.* at 76. A failure to do so can give rise to a claim for breaching the duty of good faith.

That said, under Ohio law, "a cause of action alleging a breach of the insurer's duty of good faith will not lie where the insurer has settled such claim within the monetary limits of the insured's policy." *Marginian v. Allstate Ins. Co.*, 481 N.E.2d 600, 603 (Ohio 1985). *Marginian*'s holding dooms Chemical Solvents's bad-faith claim against Greenwich and Illinois National. Chemical Solvents does not dispute that the insurers settled the claim against it within policy limits.

Nevertheless, Chemical Solvents claims that Greenwich and Illinois National engaged in a series of acts throughout the claims-handling process that constituted a breach of the insurers' duties of good faith and fair dealing. We need not evaluate whether these acts, individually or collectively, rose to the level of bad faith. That is because this court and Ohio courts have consistently interpreted *Marginian* as prohibiting bad-faith claims where an insurer settles a lawsuit within policy limits. *See Ironshore Indem., Inc. v. Evenflo Co.*, No. 24-3792, 2025 WL 1356414, at *4 (6th Cir. Apr. 25, 2025); *Am. Cas. Co. v. Atl. Painting & Contracting, Inc.*, No. 58928, 1990 WL 100398, at *2 (Ohio Ct. App. July 19, 1990) (per curiam).

Chemical Solvents argues that *Marginian* does not apply because, although Greenwich and Illinois National settled the underlying claim within policy limits, they handled the claim in an underhanded way that prejudiced Chemical Solvents and caused it to incur "further liability." D. 16 at pp.52–53. It seems that Chemical Solvents reads *Marginian* to stand for the proposition that an insurer operates in good faith when it settles within policy limits—but only if it does so without creating "further liability, over and above the limits of [the] policy." *Id.* (quoting

*Marginian*, 481 N.E.2d at 603). And because the settlement led to substantial out-of-pocket reimbursement costs, Chemical Solvents argues that it has a valid bad-faith claim.

Chemical Solvents misreads *Marginian*. That case referred to "further liability" as a "judgment . . . in excess of the limits of [the] policy." *Marginian*, 481 N.E.2d at 602. Judgments exceeding policy limits commonly form the basis of bad-faith actions where the insurer, despite ample opportunity, fails to settle a dispute within policy limits when it had the chance. *See, e.g.*, *Hart v. Republic Mut. Ins. Co.*, 87 N.E.2d 347, 349 (Ohio 1949); *Slater v. Motorists Mut. Ins. Co.*, 187 N.E.2d 45, 47–48 (Ohio 1962).

*Ironshore Indemnity, Inc. v. Evenflo Co.* is instructive. 2025 WL 1356414. The insured there argued that *Marginian*'s holding should not apply to "fronting policies," which require the insured to reimburse the insurer for amounts paid in defending and settling product liability claims. *Id.* at *4. Those policies, the logic goes, "incur[] a different slate of risks than the more run-of-the-mill insurance coverage at issue in *Marginian*." *Id.* Although we acknowledged the possibility that *Marginian* may not be a perfect fit for nontraditional insurance contracts like fronting policies, we also noted the absence of "precedent exempting such policies from *Marginian*'s capacious holding." *Id.*

Of course, this case involves group captive insurance. Like fronting policies, group captive insurance may require substantial reimbursement from the insured when resolving claims. And just as *Marginian* applies to fronting policies, it applies to Chemical Solvents's group-captive-insurance arrangement as well. *See id.*

Chemical Solvents further argues that the district court's ruling is antithetical to the principle that the duty of good faith and fair dealing differs from a party's contractual duties. But this argument ignores Ohio law, which does not recognize an "independent cause of action for

breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018).

Finally, Chemical Solvents argues that following *Marginian* would undermine public policy. We reject this argument. In diversity-of-jurisdiction cases, we have a straightforward task. If a decision from a State's highest court addresses an issue directly, we follow it. *Diamond Transp. Logistics, Inc. v. Kroger Co.*, 101 F.4th 458, 462 (6th Cir. 2024). That is what we have done.

In sum, Chemical Solvents's bad-faith claim fails as a matter of law because Greenwich and Illinois National settled the underlying claim against Chemical Solvents within policy limits.

**B.**

We turn next to the district court's decision denying Chemical Solvents's Federal Rule of Civil Procedure 56(d) motion for discovery. We review the district court's decision for an abuse of discretion. *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019).

Under Rule 56(d), a district court may grant the party opposing summary judgment additional opportunities to conduct discovery before resolving a summary-judgment motion. Fed. R. Civ. P. 56(d). We generally consider multiple factors when reviewing the denial of a Rule 56(d) motion. *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995). But we need not consider those factors when "granting the desired discovery would not have affected" the district court's summary-judgment ruling. *Thornton v. Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund*, 566 F.3d 597, 617 (6th Cir. 2009). In other words, we have upheld the denial of a 56(d) motion when "further discovery would not have changed the legal and factual deficiencies." *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 453 (6th Cir. 2023) (quotation omitted).

No amount of discovery would change the fact that Greenwich and Illinois National settled the underlying claim within policy limits. So the district court did not abuse its discretion by denying Chemical Solvents's Rule 56(d) motion.

**III.**

For the reasons above, we **AFFIRM** the district court's judgment.